J-A05021-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
v. :
:
:
CHRISTIAN HARRELL : No. 1205 EDA 2025

Appeal from the Order Entered April 14, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000451-2024

BEFORE: KUNSELMAN, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED JULY 28, 2026**

The Commonwealth appeals from the order granting Appellee's motion to dismiss pursuant to Pa.R.Crim.P. 600. On appeal, the Commonwealth argues that the trial court erred in dismissing the charges against Appellee. After review, we affirm.

On November 30, 2023, the Commonwealth filed a criminal complaint charging Appellee with possession of a firearm prohibited, aggravated assault – attempts to or causes injury with extreme indifference, carrying a firearm without a license, carrying a firearm on the public streets of Philadelphia, possession of an instrument of crime (PIC), simple assault, and recklessly endangering another person.[1]

_____

[1] 18 Pa.C.S. §§ 6105, 2702, 6106, 6108, 907, 2701, and 2705, respectively.

A preliminary hearing was scheduled for December 12, 2023. However, due to the complaining witness's failure to appear, the preliminary hearing was rescheduled for January 23, 2024. Following the hearing on January 23, 2024, all charges were held for court.[2]

On February 22, 2024, a pre-trial conference was held. At that conference, the trial court noted that discovery was complete. Another pre-trial conference was held on March 11, 2024, where the trial court again noted that discovery was complete. A jury trial was scheduled for September 23, 2024.

On September 23, 2024, the morning set for the start of the jury trial, the complaining witness failed to appear. Accordingly, the Commonwealth requested a continuance, which the trial court granted.[3] The jury trial was rescheduled for April 14, 2025.

On March 31, 2025, Appellee filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. On April 14, 2025, a hearing was held on Appellee's Rule 600 motion. At the conclusion of the hearing, the trial court granted Appellee's Rule 600 motion and dismissed the charges against Appellee.

The Commonwealth filed a timely notice of appeal. Both the Commonwealth and the trial court complied with Pa.R.A.P. 1925.

_____

[2] We note that the Commonwealth proceeded at the preliminary hearing without the complaining witness as he again failed to appear. *See* N.T., 4/14/25, at 21.

[3] The record reflects that the time following the continuance was attributed to the Commonwealth. *See* N.T., 9/23/24, at 3.

J-A05021-26

On appeal, the Commonwealth presents the following issue for our review:

> Did the [trial] court err in dismissing the charges pursuant to an alleged violation of Pa.R.Crim.P. 600, where trial was only rescheduled beyond the adjusted run date due to the victim-witness's failure to appear at the first trial listing, where the Commonwealth established that it was duly diligent in attempting to secure the witness's presence at that trial listing, and where it only sought additional evidence after trial was continued—i.e., after the delay caused by circumstances outside of the Commonwealth's control was inevitable?

Commonwealth Brief at 4.

The Commonwealth concedes that that the period of time from the filing of the criminal complaint to the first trial listing is included time for Rule 600 purposes. *See id.* at 15. However, the Commonwealth contends that the trial court erred by including the time period between the first trial listing, on September 23, 2024, and the second trial listing, on April 14, 2025, "[b]ecause that delay occurred due to circumstances beyond the Commonwealth's control and despite its due diligence."[4] *Id.* The Commonwealth argues that the only reason the trial was delayed was due to the complaining witness's failure to appear and that it exercised due diligence

_____

[4] While the Commonwealth and trial court identify the relevant period of delay as ending on April 14, 2025, *see* Trial Ct. Op., 7/10/25, at 8-9; Commonwealth's Brief at 15, the relevant period of delay actually ended on March 31, 2025 when Appellee filed his Rule 600 motion. *See Commonwealth v. Ransom*, 328 A.3d 1127, 1137 n.4 (Pa. Super. 2024) (stating that the time during which a court decides a Rule 600 motion is excludable). Accordingly, the relevant delay was a 189-day period from September 23, 2024 until March 31, 2025.

- 3 -

in attempting to secure the witness's presence. *See id.* at 14, 16. Specifically, the Commonwealth explains that it was duly diligent because it called the complaining witness six months before trial and obtained his oral confirmation that he would appear for trial, assured it had his correct address, called him weeks before trial to remind him of the date, and had a detective attempt to personally serve him with a subpoena in the days before the trial date. *See id.* The Commonwealth contends that the delay between the first trial listing and the second trial listing should be excluded from the Rule 600 calculation "because the Commonwealth exercised due diligence in attempting to secure the witness's presence at that first trial listing."[5] *See id.* at 14.

Our standard and scope of review when addressing Rule 600 claims is as follows:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

_____

[5] The Commonwealth does not argue in its appellate brief that the period between the first trial listing and the second trial listing constituted judicial delay. *See* Commonwealth's Brief at 14-20. Accordingly, we do not address the exception set forth in *Commonwealth v. Harth*, 252 A.3d 600 (Pa. 2021) regarding judicial delay in conjunction with delay caused by the Commonwealth. *See Commonwealth v. Lear*, 325 A.3d 552, 563 (Pa. 2024) (explaining that "in the absence of judicial delay in conjunction with some period of delay caused by the Commonwealth, the limited *Harth* exception does not apply" (some formatting altered)).

> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Leaner*, 202 A.3d 749, 765-66 (Pa. Super. 2019) (citation omitted and formatting altered).

Rule 600 provides, in relevant part, that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a); *see also Leaner*, 202 A.3d at 766 (stating that generally, under Rule 600, the Commonwealth must bring a criminal defendant to trial before the "mechanical run date," meaning within 365 days from the date upon which a written criminal complaint is filed).

The Rule further states:

> For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C)(1).

Our Supreme Court has explained:

> When considering a Rule 600 motion, the court must identify each period of delay and attribute it to the responsible party, then adjust the 365-day tally to arrive at the latest date upon which the Commonwealth may try the defendant [("the adjusted run date")]. Absent a demonstration of due diligence, establishing that the Commonwealth has done everything reasonable within its power to guarantee that the trial begins on time, the Commonwealth's failure to bring the defendant to trial before the

expiration of the Rule 600 time period constitutes grounds for dismissal of the charges with prejudice. *See* Pa.R.Crim.P. 600(D)(1).

*Commonwealth v. Barbour*, 189 A.3d 944, 947 (Pa. 2018) (some citations omitted and some formatting altered).

> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

*Commonwealth v. Martz*, 232 A.3d 801, 810-11 (Pa. Super. 2020) (citations omitted and formatting altered).

Additionally, "a witness's previous failure to appear . . . may be relevant in determining the reasonableness of the Commonwealth's efforts to secure his presence for trial." *Commonwealth v. Tann*, 444 A.2d 1297, 1298 (Pa. Super. 1982). However, a court should not second guess the methods used by the Commonwealth to ensure the witness's presence at trial, rather the court should address whether its methods were reasonable in light of the circumstances. *See id.*

Here, as the trial court correctly noted, the mechanical run date was November 29, 2024, which was 365 days after the criminal complaint was filed. *See* Trial Ct. Op., 7/10/25, at 6; *see also* Pa.R.Crim.P. 600(A)(2)(a); *Leaner*, 202 A.3d at 766. Because the Commonwealth concedes that the

period from the filing of the complaint until the first trial listing was included in the Rule 600 time, we only address the period following the first trial listing on September 23, 2024.

Here, the trial court concluded that the Commonwealth caused this delay and that it did not exercise due diligence in ensuring that Appellee's trial began before the Rule 600 time expired. *See* Trial Ct. Op., 7/10/25, at 4-9. Specifically, the trial court explained:

> In the instant matter, the record reflects that, although the Commonwealth asserted its trial readiness on March 11, 2024, that representation was belied by its continued production of discovery materials well beyond that date – extending through March 2025.
>
> Notably, the Commonwealth did not produce discovery material related to a domestic violence ("DV") incident that occurred two hours after the shooting until April 22, 2024, more than a month after it was requested by defense counsel on March 11, 2024. [N.T., 4/14/25, at 17, 31-32, 64.] Additional disclosures of that footage followed in July 2024, after defense counsel reported technical difficulties accessing the materials. [*Id.* at 32, 62-64] This DV incident was significant as it led to the recovery of critical evidence in the instant matter – namely, the car keys to the vehicle allegedly used in the shooting and the cellphone later subjected to forensic analysis linking Appellee to the offense. [*Id.* at 30-31, 60-61.]
>
> Further, the Commonwealth failed to disclose discovery related to a separate November 2023 vandalism incident – also involving the same vehicle and occurring just four days prior to the shooting – until February 19, 2025. [*Id.* at 17, 62-64.] Officer Smith, who was present at the scene of that incident, was expected to offer lay eyewitness testimony at trial and claimed familiarity with Appellee based on his involvement in prior incidents. [*Id.* at 63-64.] Although the prosecutor acknowledged that Officer Smith believed Appellee was present at the tail end of the vandalism incident, she also admitted that she did not provide the related body-worn camera footage to defense counsel until February

- 7 -

2025. Upon reviewing the footage, she confirmed that Appellee did not appear in any of the videos, a fact that was favorable to the defense. Despite this information's value to the defense, the Commonwealth delayed its disclosure. In fact, [Assistant District Attorney (ADA)] Stachelrodt acknowledged that she had no intention to introduce the footage herself but nonetheless conceded its potential benefit to the defense. [***Id.*** at 64].

In addition, a compilation video of surveillance footage related to the shooting was not provided until September 22, 2024, just one day before the initial trial listing. [***Id.*** at 36-38.] A PowerPoint analysis of cellphone data and certified records from Avis Budget Group, including a copy of a rental agreement signed by Appellee, were not produced until 2025. [***Id.*** at 42-43]. On February 21, 2025, the Commonwealth informed defense counsel that it had subpoenaed a representative from Avis to testify regarding those records, further evidencing the ongoing development of the prosecution's case [after the first trial listing. ***Id.***]

Moreover, although the Commonwealth had reason to know, as early as November 14, 2023 – the day after the shooting – that Appellee was on parole and had been interviewed by the assigned detective, it did not follow up with Appellee's parole officer, Tony Pham (hereinafter "Mr. Pham"), to inquire about potential GPS monitoring until February 19, 2025. [***Id.*** at 47, 66-67.] This delay is particularly concerning given the Commonwealth's theory that GPS data would place Appellee at the scene of the shooting.

Finally, audit logs from evidence.com – a system used by law enforcement and the Commonwealth to store and share digital evidence, with each filed tied to a unique identifier and an auditable trail showing upload and download activity – further confirm the delay in disclosure. For instance, the certified records of [Appellee's] records and certificate of non-licensure (CNL) were uploaded to the platform on April 23, 2024, and downloaded by defense counsel on March 24, 2025. [***Id.*** at 34-36.]

Taken together, this ongoing steam of material disclosures – including evidence favorable to the defense – demonstrates that the Commonwealth was not ready for trial as of March 11, 2024. Accordingly, the Commonwealth's continued supplementation of discovery long after the [first] trial listing date belies any assertion of due diligence.

Moreover, despite being on notice of the complainant's unreliability – having failed to appear at two preliminary hearing

- 8 -

listings – the Commonwealth did not take adequate steps to secure his attendance at trial. ADA Stachelrodt acknowledged that she suspected attendance issues as early as the preliminary hearing stage but did not seek a material witness warrant or court intervention prior to trial. [*Id.* at 57.] Instead, at the September 18, 2024 trial readiness conference, the Commonwealth misrepresented that the case was ready for trial even though the Commonwealth had no recent contact with the complaining witness and he had failed to adhere to the subpoena to appear on that same day. [*Id.* at 52-53.] However, five days later, when the complainant predictably failed to appear, the Commonwealth requested a continuance. [*Id.* at 12.] Even at that point, the Commonwealth took no steps to ensure the witness's appearance, including requesting a material witness [w]arrant. [*Id.* at 56.] The court granted the request and rescheduled the trial for April 14, 2025, explicitly stating on the record that the intervening time would not be deemed excludable for Rule 600 purposes. [*Id.* at 12-13.]

\* \* \*

[Additionally,] the Commonwealth did not propose an earlier trial date, did not request to [transfer] the case to another courtroom to accommodate Rule 600 compliance, and did not raise any concerns regarding the impending expiration of the run date until after Appellee filed a motion. The failure to take these steps reflects a lack of due diligence and an absence of reasonable efforts to ensure compliance with the time constraints imposed by Rule 600.

Accordingly, this court finds that the Commonwealth failed to bring Appellee to trial within the 365-day period required under [Rule] 600 and failed to establish that any of the delay was the result of excludable circumstances or judicial delay. The delay was attributable to the Commonwealth's lack of preparedness, incomplete discovery, failure to secure witness attendance, and failure to take proactive steps to avoid unnecessary delay.

Trial Ct. Op., 7/10/25, at 6-9 (some formatting altered and footnotes omitted).

After reviewing the record and considering the evidence presented at the Rule 600 hearing in the light most favorable to Appellee as the prevailing

party, we conclude that the trial court did not abuse its discretion in granting Appellee's Rule 600 motion. *See Leaner*, 202 A.3d at 765-66. The record reflects that the Commonwealth was responsible for the relevant period of delay and that the Commonwealth failed to act duly diligent in bringing Appellee to trial before the Rule 600 time expired.

As stated above, the relevant period of delay occurred after the Commonwealth requested a continuance due to the complaining witness's failure to appear at the first trial listing and the delay was explicitly attributed to the Commonwealth. *See* N.T., 9/23/24, at 3. The record reflects that the Commonwealth failed to exercise due diligence in securing the complaining witness's attendance at the first trial listing on September 23, 2024. While it is true that we do not apply a hindsight analysis when considering the Commonwealth's due diligence and that due diligence does not require perfect vigilance or punctilious care, due diligence is a fact specific inquiry that must be determined on a case by case basis and requires the Commonwealth to show reasonable efforts under the specific circumstances of each case. *See Martz*, 232 A.3d at 810-11; *Tann*, 444 A.2d at 1298. Under the circumstances present in this case, the Commonwealth failed to put forth reasonable efforts to obtain the testimony of the complaining witness and, therefore, was not duly diligent.

The Commonwealth knew as early as the first preliminary hearing date that the complaining witness may be uncooperative, as he failed to appear at that listing despite the automated subpoena that was mailed to his address.

*See* N.T., 4/14/25, at 20-23. He then defied a subpoena that was personally served upon him when he failed to appear at the second preliminary hearing. *See id.* at 20-24, 58. ADA Stachelrodt testified that although she made contact with him in March 2024, approximately six months before the first trial date, she did not believe he would show up to trial after that conversation. *See id.* at 51-52. Nonetheless, she waited until the day before the trial readiness conference to have a detective attempt to personally serve him with subpoenas for the trial readiness conference and first trial date, which was ultimately unsuccessful. *See id.* at 53-54; *see also* Commonwealth Exhibit C-19 (Email to Detective).

When the complaining witness did not show up to the trial readiness conference despite the automated subpoenas mailed to his address, ADA Stachelrodt advised the trial court that she was ready to proceed because she 'hoped' he might show up for trial and then waited until the afternoon before the first trial date to attempt to have police contact the complaining witness. *See* N.T., 4/14/25, at 52-56; *see also* Commonwealth Exhibit C-20 (Message to Officers); Commonwealth Exhibit C-21 (Message to Officers). At that point, police were unable to contact the complaining witness and were only able to speak with the complaining witness's mother, who advised police that her son was afraid for his life and that he was unlikely to appear as a witness at trial. *See* Commonwealth Exhibit C-22 (Email from Sergeant Glasson to ADA Stachelrodt). Under these circumstances, where the Commonwealth knew about the complaining witness's previous failures to appear in defiance of both

the automated and personally served subpoenas, the above methods used to secure the complaining witness's presence at the first trial listing were not reasonable. **See Tann**, 444 A.2d at 1298.

Additionally, as the trial court notes, the record reflects that the Commonwealth continued to turn over discovery materials long after it advised the trial court that it was trial ready in March of 2024. This included records from the domestic violence incident, which led to Appellee's arrest and the discovery of car keys connecting him to the shooting, that were not turned over until April 2024 and body-worn camera footage undercutting an officer's identification of Appellee in surveillance video of the shooting, which was not provided to the defense until February of 2025, after the first trial listing. **See** N.T., 4/14/25, at 59-68; **see also Harth**, 252 A.3d at 621-22 (stating that the Commonwealth's failure to fulfill discovery obligations may constitute a lack of due diligence).

Finally, we note that at the trial readiness conference, the Commonwealth failed to raise the lack of contact with the complaining witness. **See** N.T., 4/14/25, at 52-53. Additionally, at the first trial listing when the complaining witness failed to appear, the Commonwealth neglected to advise the trial court that the mechanical run date was approaching and failed to seek an earlier trial date with another judge to avoid running afoul of Rule 600. **See** N.T., 9/23/24, at 2-6. Such conduct by the Commonwealth demonstrates a lack of due diligence. **See Martz**, 232 A.3d at 810-11; **see also Commonwealth v. Lewis**, 804 A.2d 671, 674 (Pa. Super. 2002) (finding that

the Commonwealth was not duly diligent where it failed to promptly notify the trial court of issues securing a witness's testimony or a potential Rule 600 issue); ***Commonwealth v. Amendola***, 1309 WDA 2023, 2025 WL 48195, at *3 (Pa. Super. filed Jan. 8, 2025) (unpublished mem.) (stating that "the Commonwealth's failure to notify a court of an impending Rule 600 violation may factor into the due diligence analysis" (internal quotation omitted)).[6]

Based upon the above circumstances, we agree with the trial court that the Commonwealth was responsible for the delay from September 23, 2024 until March 31, 2025 and that it failed to exercise due diligence in attempting to bring Appellee to trial within the Rule 600 run date. ***See Martz***, 232 A.3d at 810-11; ***see also Tann***, 444 A.2d at 1298; ***Harth***, 252 A.3d at 621-22; ***Lewis***, 804 A.2d at 674. Accordingly, we conclude that trial court did not abuse its discretion in granting Appellee's motion to dismiss pursuant to Rule 600. ***See Leaner***, 202 A.3d at 765-66.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2026

---

[6] ***See*** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).